No. 12-15548

# United States Court of Appeals

*for the*

# Eleventh Circuit

———————————•———————————

SANDRA SLATER,

*Plaintiff-Appellant,*

– v. –

UNITED STATES STEEL CORPORATION,

*Defendant-Appellee.*

————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA, CASE NO. 2:09-CV-01732-KOB
HONORABLE KARON O. BOWDRE

## *EN BANC* BRIEF OF APPELLEE
## UNITED STATES STEEL CORPORATION

WILLIAM H. MORROW
IVAN B. COOPER
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203
(205) 581-0799

KATHLEEN M. SULLIVAN
WILLIAM B. ADAMS
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Appellee United States Steel Corporation*

Slater v. U.S. Steel
Eleventh Circuit No. 12-15548

## <u>CERTIFICATE OF INTERESTED PARTIES</u>

Adams, William B. – Attorney for Defendant/Appellee

Bowdre, Hon. Karon O. – District Court Judge

Cooper, Ivan B. – Attorney for Defendant/Appellee

Graham, Roderick D. – Attorney for Plaintiff/Appellant

Graham & Associates – Attorneys for Plaintiff/Appellant

Jeselnik, Anthony F. – Former Attorney for Defendant/Appellee

Lightfoot, Franklin & White, L.L.C. – Attorneys for Defendant/Appellee

Morrow, William H. – Attorney for Defendant/Appellee

Quinn Emanuel Urquhart & Sullivan, LLP – Attorneys for Defendant/Appellee

Reynolds, Samuel F., Jr. – Attorney for Defendant/Appellee

Slater, Sandra – Plaintiff/Appellant

Sullivan, Kathleen M.  – Attorney for Defendant/Appellee

Tatum, Charles C. – Attorney for Plaintiff/Appellant

United States Steel Corporation (X) – Defendant/Appellee

## <u>CORPORATE DISCLOSURE STATEMENT</u>

I certify that the following are subsidiaries, conglomerates and affiliates of United States Steel Corporation ("U.S. Steel," stock ticker "X"), and that no publicly held company currently owns 10% or more of U.S. Steel's stock:

Slater v. U.S. Steel
Eleventh Circuit No. 12-15548

189548 Canada Inc.

3292673 Canada Inc.

Acero Prime Servicios, S.R.L. de CV

Acero Prime, S.R.L. de CV

Apolo Tubulars International, Corp

Apolo Tubulars S.A.

Birmingham Southern Railroad Company

Brookfield Swan Point, LLC

Chicago Lakeside Development, LLC

Chisholm Coal LLC

Chrome Deposit Corporation

Compagnie de Gestion de Mifergui-Nimba,LTEE

Cygnus Mines Limited

Delray Connecting Railroad Company

Double G Coatings Company, L.P.

Double G Coatings, Inc.

Essex Minerals Company

Fairfield Primary Operations, LLC

Fairfield Southern Company, Inc.

Feralloy Processing Company

Fintube (Thailand) Limited

Gary Railway Company

GCW/USS Energy, LLC

Grant Assurance Corporation

Hibbing Development Company

Hibbing Taconite Company

Kanawha Coal LLC

Lake Terminal Railroad Company, The

Leeds Retail Center, LLC

Lone Star Brazil Holdings 1 Ltda.

Lone Star Brazil Holdings 2 Ltda.

Lone Star Steel Holdings II, Inc.

Lone Star Steel Holdings, Inc.

Lorain Northern Company

Marquette Range Coal Service Company

Mittal Steel USA - Ontario Iron Inc.

OBAL-SERVIS, a.s. Košice

Oilfield Technologies, Inc.

Ontario Coal Company

Ontario Eveleth Company

Slater v. U.S. Steel
Eleventh Circuit No. 12-15548

Ontario Hibbing Company

Ontario Tilden Company

Orinoco Mining Company

Patriot Premium Threading Services, LLC

Perdido Land Development Co., Inc.

Pitcal Pipe, LLC

PITCAL, Inc.

Preserve Village Developers, LLC

ProCoil Company, LLC

PRO-TEC Coating Company

PRO-TEC Coating Company, Inc.

RMS, a.s. Košice (prev.VULKMONT, a.s. Košice)

Societe Des mines de Fer de Guinee Pour L'Exploitation

Star Brazil US, LLC 1

Star Brazil US, LLC 2

Stelco Coal Company

Stelco Erie Corporation

Stelco Holding Company

Swan Point Development Company, Inc.

Swan Point Recreation, LLC

Slater v. U.S. Steel
Eleventh Circuit No. 12-15548

Swan Point Yacht & Country Club, Inc.

Texas & Northern Railway Company

Tilden Mining Company, LLC

Timber Wolf Land, LLC

Tracks Traffic and Management Services, Inc.

Transtar, Inc.

U. S. Steel Canada Limited Partnership

U. S. Steel China, LLC

U. S. Steel Europe - Bohemia a.s.

U. S. Steel Europe - France S.A.

U. S. Steel Europe - Germany GmbH

U. S. Steel Europe - Italy S.r.l

U. S. Steel Global Holdings I, B.V.

U. S. Steel Global Holdings II, B.V.

U. S. Steel Global Holdings VI, B.V.

U. S. Steel Holdings II, LLC

U. S. Steel Holdings IV, Inc.

U. S. Steel Holdings, Inc.

U. S. Steel International of Canada, LTD.

U. S. Steel Košice – Labortest, s.r.o.

Slater v. U.S. Steel
Eleventh Circuit No. 12-15548

U. S. Steel Košice, s.r.o. (USSK)

U. S. Steel LRD Canada North Inc.

U. S. Steel Mining Company, LLC

U. S. Steel Oilwell Services, LLC

U. S. Steel Seamless Tubular Operations, LLC

U. S. Steel Services s.r.o.

U. S. Steel Timber Company, LLC

U. S. Steel Tubular Products Canada Inc.

U. S. Steel Tubular Products Holdings, LLC

U. S. Steel Tubular Products, Inc.

U.S. Steel Košice - SBS, s.r.o.

U.S. Steel Produtos Tubulares do Brasil Ldta.

UEC Sail Information Technology, LTD.

UEC Technologies, LLC

Union Railroad Company

United Spiral Pipe, LLC

United States Steel Export Company de Mexico, S.R.L. de C.V.

United States Steel International de Mexico, S.R.L. de C.V.

United States Steel International, Inc.

USS Galvanizing, Inc.

Slater v. U.S. Steel
Eleventh Circuit No. 12-15548

USS International Services, LLC

USS Lakeside, LLC

USS Mine Management, Inc.

USS Oilwell Supply Co., LTD.

USS Oilwell Tubular, Inc.

USS Portfolio Delaware, Inc.

USS WSP, LLC

USS-POSCO Industries

USX Engineers and Consultants

USX International Sales Company, Inc.

Warrior & Gulf Navigation LLC

Worldwide Steel C.V.

Worthington Specialty Processing

Worthington Taylor, LLC

Zinklahoma, Inc.

/s/ Kathleen M. Sullivan
Kathleen M. Sullivan
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York  10010
(212) 849-7000
kathleensullivan@quinnemanuel.com
*Attorney for Appellee*

## STATEMENT REGARDING ORAL ARGUMENT

In its September 22, 2016 *en banc* briefing order (ECF 40), this Court ordered that oral argument will be held during the week of February 6, 2017, in Atlanta, Georgia, and that each party will be allotted 20 minutes of oral argument.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PARTIES ......................................................c-1

CORPORATE DISCLOSURE STATEMENT .....................................................c-1

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CONTENTS........................................................................................ ii

TABLE OF AUTHORITIES ................................................................................iv

PRELIMINARY STATEMENT ............................................................................1

COUNTER-STATEMENT OF THE ISSUES ......................................................4

COUNTER-STATEMENT OF THE CASE ..........................................................4

    A.    Slater's Employment At U.S. Steel.........................................................4

    B.    Slater's Employment-Discrimination Claims .......................................5

    C.    Slater's Bankruptcy Filing ...................................................................7

    D.    The District Court's Judicial-Estoppel Decision...................................9

    E.    This Court's Panel Decision................................................................13

SUMMARY OF ARGUMENT ............................................................................16

STANDARD OF REVIEW .................................................................................18

ARGUMENT .......................................................................................................19

I.    *BURNES* AND *BARGER* PROVIDE THE CORRECT STANDARD FOR JUDICIAL ESTOPPEL IN THE BANKRUPTCY CONTEXT..........19

    A.    *Burnes* And *Barger* Follow Longstanding Precedent In This And Other Circuits ...........................................................................19

    B.    *Burnes* And *Barger* Correctly Apply *New Hampshire* To Debtors Who Conceal Claims From The Bankruptcy Court .............25

          1.    A Debtor Takes "Clearly Inconsistent" Positions By Asserting Claims In District Court That The Debtor Concealed From A Bankruptcy Court .....................................27

          2.    A Bankruptcy Court Accepts A Debtor's Position When It Relies At Any Stage Of A Bankruptcy Proceeding On A Representation That No Claim Exists...................................28

3.    A Debtor Who Conceals Claims From A Bankruptcy Court Gains An Unfair Advantage ...........................................33

4.    A Debtor's Knowledge Of A Claim And Motive To Conceal It Support An Inference Of Intentional Nondisclosure.................................................................................35

C.    *Burnes* And *Barger* Rest On Sound Policy Considerations................41

1.    *Burnes* And *Barger* Protect The Integrity Of The Judicial System ...................................................................................41

(a)    *Burnes* And *Barger* Protect The Integrity Of The District Court ....................................................42

(b)    *Burnes* And *Barger* Protect The Integrity Of The Bankruptcy Court...........................................44

2.    *Burnes* And *Barger* Are Fair To Both Debtors And Creditors ...............................................................................49

3.    *Burnes* And *Barger* Promote Sound Judicial Administration ........................................................................53

II.    ALTERNATIVELY, THE DISTRICT COURT'S DISMISSAL OF SLATER'S RACE-DISCRIMINATION CLAIM ON THE MERITS SHOULD BE AFFIRMED.................................................................55

CONCLUSION ..................................................................................................56

CERTIFICATE OF COMPLIANCE...............................................................58

CERTIFICATE OF SERVICE ........................................................................59

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ah Quin v. Cty. of Kauai Dep't of Transp.*,
  733 F.3d 267 (9th Cir. 2013) ..................................................... 19, 27, 34, 47-48

*Ajaka v. Brooksamerica Mortg. Corp.*,
  453 F.3d 1339 (11th Cir. 2006) ............................................................. 26-27, 38

*Baloco v. Drummond Co.*,
  767 F.3d 1229 (11th Cir. 2014) ...........................................................................8

*Barger v. City of Cartersville*,
  348 F.3d 1289 (11th Cir. 2003) .........................1-4, 12, 15-19, 21, 24, 25, 27, 35
                                                                                41, 42, 44, 45, 49-51, 53, 56

*Bennett v. Flagstar Bank*,
  2011 WL 6152940 (S.D. Ga. Dec. 8, 2011) .....................................................39

*Biesek v. Soo Line R. Co.*,
  440 F.3d 410 (7th Cir. 2006) .............................................................................23

*Burnes v. Pemco Aeroplex, Inc.*,
  291 F.3d 1282 (11th Cir. 2002) ...................1-4, 11-13, 15-19, 21-27, 29, 34-38,
                                                                                41, 42, 44, 45, 48, 49, 53, 55, 56

*Cannon-Stokes v. Potter*,
  453 F.3d 446 (7th Cir. 2006) .....................................................23, 29, 41, 45, 46

*Chandler v. Samford Univ.*,
  35 F. Supp. 2d 861 (N.D. Ala. 1999)................................................................22

*Chaveriat v. Williams Pipe Line Co.*,
  11 F.3d 1420 (7th Cir. 1993) .............................................................................46

*In re Coastal Plains, Inc.*,
  179 F.3d 197 (5th Cir. 1999) .............................................. 21, 22, 29, 35, 36, 45

*Crosby v. Monroe Cty.*,
  394 F.3d 1328 (11th Cir. 2004) ...........................................................11, 43, 51

iv

*Davis v. Wakelee*,
   156 U.S. 680 (1895)...................................................................20

*DeLeon v. Comcar Indus., Inc.*,
   321 F.3d 1289 (11th Cir. 2003) ...........................................21

*Dunn v. Advanced Med. Specialties, Inc.*,
   556 F. App'x 785 (11th Cir. 2014) ......................................40

*Dzakula v. McHugh*,
   2011 WL 1807241 (N.D. Cal. Apr. 22, 2011),
   *aff'd*, 746 F.3d 399 (9th Cir. 2013)..........................31, 37, 48

*Eastman v. Union Pac. R.R. Co.*,
   493 F.3d 1151 (10th Cir. 2007) ......................19, 23, 37, 41

*Eubanks v. CBSK Fin. Grp., Inc.*,
   385 F.3d 894 (6th Cir. 2004) ...............................................46

*F.T.C. v. Gem Merch. Corp.*,
   87 F.3d 466 (11th Cir. 1996) ...............................................46

*Farr v. Hall Cty., Ga.*,
   2011 WL 5921462 (N.D. Ga. Nov. 28, 2011) ....................39

*First Nat'l Bank v. Lasater*,
   196 U.S. 115 (1905).................................................................22

*Flowers v. Troup Cty., Ga., Sch. Dist.*,
   803 F.3d 1327 (11th Cir. 2015) ...........................................55

*Grant v. George Schumann Tire & Battery Co.*,
   908 F.2d 874 (11th Cir. 1990) .............................................31

*Guay v. Burack*,
   677 F.3d 10 (1st Cir. 2012)..................... 19, 23, 28, 34, 45, 45, 52

*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F.3d 778 (9th Cir. 2001) .........................21, 28, 44, 45

*In re Jefferson Cty., Ala.*,
   484 B.R. 427 (Bankr. N.D. Ala. 2012)...............................31

*John S. Clark Co. v. Faggert & Frieden, P.C.*,
  65 F.3d 26 (4th Cir. 1995) ...................................................................26

*Johnson Serv. Co. v. TransAmerica Ins. Co.*,
  485 F.2d 164 (5th Cir. 1973) ...............................................................20

*Kimberlin v. Dollar Gen. Corp.*,
  520 F. App'x 312 (6th Cir. 2013) .........................................................23

*King v. Herbert J. Thomas Mem'l Hosp.*,
  159 F.3d 192 (4th Cir. 1998) ...............................................................19

*In re Knight-Celotex, LLC*,
  695 F.3d 714 (7th Cir. 2012) ...............................................................19

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
  337 F.3d 314 (3d Cir. 2003) .....................................23, 34, 37, 43, 45

*Lawrence v. Goldberg*,
  573 F.3d 1265 (11th Cir. 2009) ...........................................................31

*Lewis v. Weyerhaeuser Co.*,
  141 F. App'x 420 (6th Cir. 2005) ...................................................23, 41

*Love v. Tyson Foods, Inc.*,
  677 F.3d 258 (5th Cir. 2012) .......................................19, 23, 34, 37

*Maniccia v. Brown*,
  171 F.3d 1364 (11th Cir. 1999) ...........................................................56

*Marshall v. Honeywell Tech. Sys. Inc.*,
  828 F.3d 923 (D.C. Cir. 2016).......................................................18, 23, 28

*Marshall v. Sandersville R.R. Co.*,
  2015 WL 3648603 (M.D. Ga. June 10, 2015)....................................39

*Matthews v. Potter*,
  316 F. App'x 518 (7th Cir. 2009) .........................................................23

*McGinley v. Houston*,
  361 F.3d 1328 (11th Cir. 2004) ...........................................................24

*McKinnon v. Blue Cross & Blue Shield of Ala.*,
935 F.2d 1187 (11th Cir. 1991) ........................................................20

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*,
243 F.3d 773 (3d Cir. 2001) ................................................19

*Moorer v. Rooms to Go Ala. Corp.*,
2015 WL 4426085 (N.D. Ala. July 20, 2015) ...................................39

*Moses v. Howard Univ. Hosp.*,
606 F.3d 789 (D.C. Cir. 2010)...............................................23, 34, 42

*New Hampshire v. Maine*,
532 U.S. 742 (2001)............................. 1, 2, 14, 17, 20, 25-28, 32, 33, 41, 42, 44

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
848 F.2d 414 (3d Cir. 1988) ................................................22, 35, 38

*Palmer & Cay, Inc. v. Marsh & McLennan Cos.*,
404 F.3d 1297 (11th Cir. 2005) ........................................................38

*Parker v. Wendy's Int'l, Inc.*,
365 F.3d 1268 (11th Cir. 2004) ...........................................16, 43, 50

*Parklane Hosiery Co. v. Shore*,
439 U.S. 322 (1979)...........................................................................50

*Payless Wholesale Distribs. Inc. v. Alberto Culver, (P.R.) Inc.*,
989 F.2d 570 (1st Cir. 1993).............................................21, 22, 35, 45

*Public Health Tr. of Dade Cty., Fla. v. Lake Aircraft, Inc.*,
992 F.2d 291 (11th Cir. 1993) ........................................................24

*Queen v. TA Operating, LLC*,
734 F.3d 1081 (10th Cir. 2013) .......................................................28

*Reed v. City of Arlington*,
650 F.3d 571 (5th Cir. 2011) ...........................................................50

*Reynolds v. Comm'r*,
861 F.2d 469 (6th Cir. 1988) ...........................................................29

vii

*Robinson v. Tyson Foods, Inc.*,
595 F.3d 1269 (11th Cir. 2010) ............................... 12, 13, 18, 20, 24, 26, 28, 47

*Rosenshein v. Kleban*,
918 F. Supp. 98 (S.D.N.Y. 1996) ........................................................45

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
81 F.3d 355 (3d Cir. 1996) ...........................................................35, 38

*SEC v. First City Fin. Corp.*,
890 F.2d 1215 (D.C. Cir. 1989)........................................................46

*SEC v. N. Am. Clearing, Inc.*,
2016 WL 3878481 (11th Cir. July 18, 2016) ....................................32

*Salomon Smith Barney, Inc. v. Harvey, M.D.*,
260 F.3d 1302 (11th Cir. 2001) .......................................................20

*Scarano v. Cent. R.R. Co.*,
203 F.2d 510 (3d Cir. 1953) ............................................................20

*Scoggins v. Arrow Trucking Co.*,
92 F. Supp. 2d 1372 (S.D. Ga. 2000) ...............................................22

*Silvera v. Orange Cty. Sch. Bd.*,
244 F.3d 1253 (11th Cir. 2001) .......................................................56

*Slater v. U.S. Steel Corp.*,
820 F.3d 1193 (11th Cir. 2016) ............. 14-16, 24, 30, 33, 42, 46, 49, 50, 52, 58

*Smith v. Werner Enters., Inc.*,
65 F. Supp. 3d 1305 (S.D. Ala. 2014) ..............................................39

*Spaine v. Cmty. Contacts, Inc.*,
756 F.3d 542 (7th Cir. 2014) .....................................................23, 53

*Spann v. DynCorp Tech. Servs., LLC*,
403 F. Supp. 2d 1082 (M.D. Ala. 2005)............................................39

*Stallings v. Hussmann Corp.*,
447 F.3d 1041 (8th Cir. 2006) ...................................................19, 23

*Strong v. Am.'s Ctr. Food Serv. Partners/Levy Rest. Ltd. P'ship*,
   189 F. App'x 587 (8th Cir. 2006) .......................................................23

*In re Superior Crewboats, Inc.*,
   374 F.3d 330 (5th Cir. 2004) ............................................23, 29, 34

*Things Remembered, Inc. v. Petrarca*,
   516 U.S. 124 (1995).........................................................................47

*Tidewater Fin. Co. v. Williams*,
   498 F.3d 249 (4th Cir. 2007) ...........................................................51

*Trask v. Sec'y, Dep't of Veterans Affairs*,
   822 F.3d 1179 (11th Cir. 2016) .......................................................19

*United States ex rel. Gebert v. Transp. Admin. Servs.*,
   260 F.3d 909 (8th Cir. 2001) ...........................................................21

*United States v. Edwards*,
   595 F.3d 1004 (9th Cir. 2010) .........................................................52

*United States v. McCaskey*,
   9 F.3d 368 (5th Cir. 1993) ...............................................................44

*United States v. Walker*,
   198 F.3d 811 (11th Cir. 1999) .........................................................24

*Valentine-Johnson v. Roche*,
   386 F.3d 800 (6th Cir. 2004) ...........................................................23

*Wheeler v. Fla. Dep't of Corr.*,
   2006 WL 2321114 (M.D. Fla. Aug. 9, 2006)....................................39

*White v. Wyndham Vacation Ownership, Inc.*,
   617 F.3d 472 (6th Cir. 2010) .....................................19, 23, 29, 37, 41

*Williams v. Hainje*,
   375 F. App'x 625 (7th Cir. 2010) .....................................................29

## <u>Constitutional Provisions</u>

U.S. Const. amend. VII ................................................................................50

## Statutes

11 U.S.C. § 350 ................................................................................................32, 46

11 U.S.C. § 362 ...........................................................................................................29

11 U.S.C. § 521 ......................................................................................................22, 27

11 U.S.C. § 541 ......................................................................................................22, 28

11 U.S.C. § 554 ...........................................................................................................51

11 U.S.C. § 704 .............................................................................................................9

11 U.S.C. § 1125 ..........................................................................................................22

11 U.S.C. § 1306 ..........................................................................................................52

18 U.S.C. § 152 ...........................................................................................................46

18 U.S.C. § 3057 .........................................................................................................46

28 U.S.C. § 586 ...........................................................................................................31

42 U.S.C. § 1981 ...............................................................................................6, 7, 13

42 U.S.C. § 2000e ..........................................................................................................6

## Public Laws and Legislative History

Bankruptcy Act of 1978, Pub. L. 95-598, 92 Stat. 2549 (Nov. 6, 1978)................23

H.R. Rep. No. 595 (1977) ..........................................................................................52

## Rules

Fed. R. Bankr. P. 2002 ..........................................................................................8, 30

Fed. R. Bankr. P. 5009 ..........................................................................................9, 32

Fed. R. Bankr. P. 5010 ...............................................................................................46

Fed. R. Bankr. P. 9011 ...............................................................................................46

Fed. R. Bankr. P. 9035 ...............................................................................................31

## <u>Other Authorities</u>

*Collier on Bankruptcy* (Alan N. Resnick & Henry J. Sommer eds.,
15th ed. rev.) ........................................................................52

*Collier on Bankruptcy* (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)........33

Eric Hilmo, *Bankrupt Estoppel: The Case for A Uniform Doctrine of
Judicial Estoppel As Applied Against Former Bankruptcy Debtors,*
81 Fordham L. Rev. 1353 (2012) ......................................................24

## PRELIMINARY STATEMENT

This rehearing *en banc* involves an appeal from a final judgment of the U.S. District Court for the Northern District of Alabama (Bowdre, J.) dismissing certain of Plaintiff-Appellant Sandra Slater's claims against Defendant-Appellee United States Steel Corporation ("U.S. Steel") on the merits and ruling that all of her claims are barred by the doctrine of judicial estoppel.  Relying principally on this Court's decisions in *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002), and *Barger v. City of Cartersville*, 348 F.3d 1289 (11th Cir. 2003), the district court concluded that Slater's deliberate concealment of her claims from the bankruptcy court precluded her from pursuing those same claims in the district court.  A panel of this Court (Tjoflat & W. Pryor, JJ., & Scola, D.J.) affirmed *per curiam*, with Judge Tjoflat filing a special concurrence urging *en banc* review.

This Court has granted *en banc* review to determine whether *Burnes* and *Barger* should be overruled.  They should not.  This Court should reaffirm those decisions, which follow the longstanding principle that parties may not make a mockery of the judicial system by taking inconsistent positions before different tribunals.  As the Supreme Court held in *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001), the doctrine of judicial estoppel generally applies where a party's positions are "clearly inconsistent," the first position has been accepted as true by one court, and the assertion of inconsistent positions will result in unfair advantage

1

or prejudice. *Every* federal court of appeals to address judicial estoppel in the bankruptcy context agrees that a debtor misuses the judicial process by failing to disclose a legal claim as an asset in a bankruptcy case, yet asserting that claim in district court. In such a case, the debtor inconsistently seeks to recover damages on a claim that she has represented to the bankruptcy court that she does not hold.

In arguing that *Burnes* and *Barger* should be overruled, Slater suggests that judicial estoppel should not apply before a bankruptcy court issues a final order discharging debts or confirming a debtor's bankruptcy plan. That argument is unpersuasive. Nothing in *New Hampshire* requires that the first case be closed before judicial estoppel can be applied in a second case. Moreover, a bankruptcy court may rely on a debtor's false asset disclosures in many ways prior to the conclusion of the proceedings. Indeed, here, the bankruptcy court relied on Slater's representation that she had no legal claims for damages at least two times over—when it designated the case a "no asset" proceeding and when the bankruptcy trustee, as an officer of the court, filed his final report of no distribution based on Slater's misrepresentation. To hold that such clear reliance is insufficient to support judicial estoppel would encourage debtors to conceal their claims in bankruptcy and induce defendants to wait until after a bankruptcy proceeding concludes to bring attention to a debtor's omissions.

2

Nor is there any other good reason to overrule *Burnes* and *Barger*. Those cases set forth a fair and flexible standard providing that a debtor's knowledge of her legal claim and motive to conceal it from the bankruptcy court support an inference that the debtor intended to conceal that claim and thus misuse the judicial system. This standard follows common sense while leaving district courts entirely free to find in particular circumstances that a debtor's omission was inadvertent and thus that judicial estoppel is inapplicable—as they have in numerous instances in this Circuit. This Court should not now upset decades of settled law by jettisoning that sensible standard.

Finally, deciding the *en banc* question so as to overturn the district court's judicial-estoppel ruling cannot fully resolve this appeal. The district court's order granting summary judgment to U.S. Steel on the merits of Slater's race-discrimination claim provides an alternative and sufficient ground for affirming dismissal of that claim. Slater alleges that U.S. Steel discriminated on the basis of her race in refusing to credit her period of employment at another U.S. Steel plant in calculating service time. But, as the district court ruled, Slater failed to make a prima facie showing of disparate treatment because, having compared herself only to another employee who did *not* transfer between plants, she offered no evidence that any similarly situated employee of a different race was treated more favorably.

3

*Burnes* and *Barger* should not be overruled, and the district court's judgment should be affirmed.

## COUNTER-STATEMENT OF THE ISSUES

1.    Whether the doctrine of judicial estoppel as applied to *Barger v. City of Cartersville*, 348 F.3d 1289 (11th Cir. 2003), and *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002), should be overruled.

2.    Whether a plaintiff states a prima facie race-discrimination claim based on differential treatment in crediting transferred service time where the alleged similarly-situated comparator employee was not a transfer employee.

## COUNTER-STATEMENT OF THE CASE

### A.    Slater's Employment At U.S. Steel

This case arises from Slater's claims that U.S. Steel engaged in sex and race discrimination in employment.  Slater, an African-American woman, became an employee of U.S. Steel in August 1998.  She worked in the company's steel mill in Gary, Indiana until February 2008.  Dkt.29, Ex. A at 24.  In 2007, she requested a transfer to a U.S. Steel facility in Fairfield, Alabama.  Dkt.29, Ex. A at 22.  The transfer was approved, and Slater began working at the Fairfield plant in March 2008.  Dkt.29, Ex. B at 24.

Carolyn Farless, a white woman, was also an employee at U.S. Steel's Fairfield plant while Slater was employed there.  Dkt.29, Ex. B at 73-75.  Unlike Slater, Farless did not transfer from a different facility.  *Id.*  Instead, Farless

4

applied to work at the Fairfield plant directly and was hired approximately three years before Slater's transfer.  Dkt.29, Ex. A at 244-46, Ex. B at 74-75.

In late 2008 and through 2009, U.S. Steel conducted layoffs at the Fairfield plant due to a downturn in orders for its steel products.  Dkt.29, Ex. C at 81-84. Pursuant to a collective bargaining agreement, these layoffs were based on employees' service time at the Fairfield plant and seniority.  *Id.*  Both Farless and Slater were laid off during this reduction in U.S. Steel's work force—Farless in late November or early December 2008, and Slater in February 2009.  Dkt.29, Ex. A at 110.  Slater and Farless both returned to work for U.S. Steel in July 2009.  *Id.* at 110-11.

### B.    Slater's Employment-Discrimination Claims

In February 2009, shortly after her termination, Slater filed a charge of sex discrimination with the U.S. Equal Employment Opportunity Commission, alleging that, as a woman, she was required to do janitorial office-cleaning tasks that were not required of similarly-situated male employees.  Dkt.29, Ex. J at 1.  In June 2009, the Commission dismissed Slater's charge for lack of evidence establishing any employment discrimination violation and notified Slater of her right to sue on her allegations.  *Id.* at 19-20.

Slater commenced this action in the district court against U.S. Steel in August 2009, asserting three causes of action for employment discrimination based

on sex and race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e *et seq.*, and 42 U.S.C. § 1981, and seeking damages and reinstatement. Dkt.1. In Count I of her complaint, Slater alleged that U.S. Steel discriminated against her on the basis of sex in violation of Title VII by (1) refusing to count the time she worked in its Gary mill in calculating her seniority at its Fairfield mill even though male employees were allowed to transfer service time credit, with the result that Slater was laid off; (2) assigning Slater and other female employees menial janitorial duties; and (3) refusing to train Slater and other female employees to operate heavy machinery. *Id.* ¶ 17. In Count II, Slater alleged that U.S. Steel violated Title VII and Section 1981 by laying her off in retaliation for protesting its "discriminatory layoff practices," including retaining a white woman while laying off more senior African-American employees. *Id.* ¶ 24-26. In Count III, Slater asserted sex- and race-discrimination claims under Section 1981 based on the above allegations and an allegation that U.S. Steel credited Farless's time at a different plant in calculating her service time at the Fairfield facility but refused to credit Slater's service time at the Gary mill. *Id.* ¶¶ 33-34.

In May 2011, the district court granted partial summary judgment in favor of U.S. Steel. Dkt.51. With respect to Count I, the court ruled that Slater had failed to identify a similarly-situated male comparator to support her claim for differential treatment of service time and that she had failed to administratively

exhaust her claim based on alleged adverse employment actions—in the district court's terms, her "quid-pro-quo discrimination" claim. *Id.* at 1. The court denied summary judgment, however, as to her sex-discrimination claim based on allegations of a hostile work environment—discriminatory job assignments and refusal to train female employees. *Id.* at 1-2.

As to Count II, the court ruled that Slater failed to administratively exhaust her claim of sex-based retaliation, but denied summary judgment on her claim that she was laid off in retaliation for protesting racially discriminatory practices in layoffs. Dkt.51 at 2.

Finally, as to Count III, the court granted summary judgment to U.S. Steel on Slater's sex-discrimination claim because Section 1981 "does not encompass sex discrimination," and on her race-discrimination claim because Slater did not produce evidence that U.S. Steel "treated similarly situated white employees more favorably…." Dkt.51 at 3.

The district court set trial for September 2011 on Slater's claims for hostile-work-environment sex discrimination and race-discrimination retaliation. Dkt.59.

## C.    Slater's Bankruptcy Filing

In June 2011, Slater, represented by separate counsel, filed a Chapter 7 bankruptcy petition in the U.S. Bankruptcy Court for the Northern District of

Alabama.  Bankr.Dkt.1.[1]  Notwithstanding that trial on some of her discrimination claims was imminent, Slater answered "None" where asked to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case" in her Statement of Financial Affairs filed with the petition.  Dkt.68, Ex. B at 13.  Slater likewise answered "None" where asked to list "contingent and unliquidated claims of every nature" in her Personal Property Schedule B list of assets.  *Id.* at 8.  Slater signed declarations under penalty of perjury that she had reviewed the answers contained in both documents and that they were "true and correct."  *Id.* at 11, 18.

Based on Slater's filings, the bankruptcy court issued a notice for a meeting of creditors to be held on July 7, 2011, using Bankruptcy Form 9A, a form reserved for "no-asset" proceedings, and named a trustee of Slater's bankruptcy estate.  Bankr.Dkt.7 at 1.[2]  The notice instructed creditors that "[t]here does not

---

[1]   References to "Bankr.Dkt." refer to documents on the public docket of Case No. 11-02865-TBB13 (Bankr. N.D. Ala.), a copy of which is included in the record excerpts at Dkt. 68, Ex. C.  This Court may take judicial notice of documents filed in Slater's bankruptcy proceeding that were not included in the district court record.  *See Baloco v. Drummond Co.*, 767 F.3d 1229, 1241 n.13 (11th Cir. 2014).

[2]   Typically, the bankruptcy court clerk completes Bankruptcy Form 9A based on information filed by the debtor.  *See* Instructions, Form B9(A-I), at 1, *available at* http://www.uscourts.gov/forms/bankruptcy-forms/chapter-7-individual-or-joint-debtor-no-asset-case.  Designation of a bankruptcy as a "no asset" case results in certain expedited procedures—for example, as happened here, creditors may be instructed not to file proofs of claims.  *See* FED. R. BANKR. P. 2002(e).

8

appear to be any property available to the trustee to pay creditors. *You therefore should not file a proof of claim at this time.*" *Id.* at 2 (emphasis in original).

After the meeting of creditors, on July 12, 2011, the bankruptcy trustee issued a Report Of No Distribution pursuant to 11 U.S.C. § 704(a)(9), stating "that there is no property available for distribution from the estate over and above that exempted by law" and "that the estate of [Slater] has been fully administered," and requesting to be discharged of his duties as trustee. Bankr.Dkt.13. No objections to the trustee's report were filed and, accordingly, the estate became presumptively fully administered thirty days later, on August 11, 2011. *See* FED. R. BANKR. P. 5009(a) ("if within 30 days [of the trustee's final report] no objection has been filed…, there shall be a presumption that the estate has been fully administered").

### D.    The District Court's Judicial-Estoppel Decision

After Slater entered bankruptcy, U.S. Steel discovered that she had petitioned for bankruptcy without disclosing her claims in this action. On August 12, 2011, U.S. Steel sought leave in the district court to move to dismiss Slater's complaint or, alternatively, for summary judgment, submitting a copy of the public bankruptcy docket in support of its request. Dkt.63-1. U.S. Steel contended that (1) Slater lacked standing to pursue her claims, which were the property of her bankruptcy estate and thus subject to the sole control of the Chapter 7 trustee, and (2) Slater was judicially estopped from pursuing her claims because she failed to

9

disclose them to the bankruptcy court.  Dkt.66 at 2-3.  The district court granted leave to file the motion.  Dkt.64.

Three days later, on August 15, 2011, Slater filed an amended Statement of Financial Affairs and schedule of personal property in the bankruptcy court, which for the first time disclosed her claims against U.S. Steel as assets.  Bankr.Dkt.14, 15.  She amended her summary of schedules on August 22, 2011.  Bankr.Dkt.17.  Then, on August 29, 2011, Slater opposed U.S. Steel's motion in the district court, stating in an affidavit that she "did not intentionally misrepresent facts to the bankruptcy court," that she "did not understand the question put forth in the Chapter 7[] petition," and that she "thought that [she] was being asked about suits filed against [her]."  Dkt.78, Ex. 1.  Slater did not assert that she lacked knowledge of her claims at the time of her bankruptcy filing or that she answered "none" by mistake or with any legitimate motive.

Shortly after Slater's belated disclosure of her claims, the Chapter 7 Trustee in Slater's bankruptcy proceeding withdrew his Report Of No Distribution (Bankr. Dkt.20) and notified Slater's counsel that he would prosecute Slater's claims on behalf of the bankruptcy estate (Dkt.79).  On August 30, 2011, Slater moved for a continuation of the trial on her discrimination claims, citing the bankruptcy trustee's intent to take over the claims as the real party in interest and

"complications created by the filing of bankruptcy." *Id.* The court granted the continuance and suspended all pre-trial deadlines. Dkt.85.

In September 2011, Slater filed a motion in the bankruptcy court to convert her Chapter 7 proceeding to a Chapter 13 proceeding (Bankr.Dkt.26), which the bankruptcy court initially denied at a hearing but later granted following Slater's renewed motion (Dkt.87; Dkt.88 at 3-5; Bankr.Dkt.42). The conversion caused Slater to become a Chapter 13 debtor-in-possession of the estate's property, including her claims against U.S. Steel. As a Chapter 13 debtor-in-possession, unlike a Chapter 7 debtor, Slater "retain[ed] standing to pursue legal claims on behalf of the estate." *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1331 n.2 (11th Cir. 2004). U.S. Steel therefore withdrew its argument that Slater lacked standing, recognizing that "a Chapter 13 debtor is the real party in interest and has standing to bring suit in his or her own right without deference to or restrictions from the standing Chapter 13 trustee." Dkt.88 at 16. The judicial-estoppel portion of U.S. Steel's motion remained ripe for decision.

In September 2012, the district court granted summary judgment to U.S. Steel on all claims, ruling that Slater is judicially estopped from asserting claims that she concealed from the bankruptcy court. The district court applied the standard for judicial estoppel this Court set forth in *Burnes*: "'First, it must be shown that the allegedly inconsistent positions were made under oath in a prior

11

proceeding.  Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system.'"  Dkt.89 at 8 (quoting *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010)).

As to the first factor, the district court explained that "[n]o dispute exists that Ms. Slater's failure to disclose the instant suit in her original bankruptcy petition, which was made under oath, constitutes an inconsistent position in the prior bankruptcy proceeding."  Dkt.89 at 9.

As to the second factor, the district court noted that it "must analyze the party's intent," and went on to reject Slater's argument "that her failure to disclose was inadvertent" and "not calculated to make a mockery of the judicial system." Dkt.89 at 10.  It applied this Court's holdings in *Burnes* and *Barger* that "'the debtor's failure to satisfy his statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.'"  *Id.* at 11 (quoting *Barger*, 348 F.3d at 1295-96).

The district court inferred Slater's knowledge of her claim from the fact that, "[a]t the time she filed her petition under Chapter 7, th[e] court had entered an order finding that at least some of her claims of discrimination and retaliation would proceed to trial."  Dkt.89 at 12.  As for motive, the court concluded that Slater's request for a "no distribution" discharge "despite the real possibility with the impending trial of the discrimination case that she could soon be receiving a

12

money settlement or a money judgment" supported an inference, as a matter of "[c]ommon sense," that she was motivated by "a desire to defraud creditors." *Id.* The court rejected Slater's argument that her belated correction of her asset schedule in August 2011 excused her non-disclosure, because "motive is measured at the time of concealment and prior to the time the adversary—here, U.S. Steel— discovered and exposed the concealment." *Id.* (citing *Robinson*, 595 F.3d at 1276, and *Burnes*, 291 F.3d at 1288). "[I]nfer[ring] from the record an intent to make a mockery of the judicial system," the court ruled that judicial estoppel bars Slater's claims. *Id.* at 13.

Having previously granted summary judgment to U.S. Steel on the merits of Slater's "quid-pro-quo" and sex-based retaliation claims, as well as her Section 1981 sex-discrimination claim, the district court entered final judgment in favor of U.S. Steel on all claims. Dkt.90.

## E.     This Court's Panel Decision

On appeal, Slater argued (*see, e.g.*, Panel Br. 7), *first*, that the district court erred in granting summary judgment to U.S. Steel on her claim of race discrimination based on disparate treatment, and, *second*, that the district court

13

abused its discretion in dismissing her claims on the basis of judicial estoppel.[3]  A panel of this Court rejected both of Slater's arguments and affirmed the district court's judgment in a *per curiam* opinion.  *Slater*, 820 F.3d at 1198-1210.  Judge Tjoflat filed a special concurrence, *id.* at 1210-52, urging *en banc* review, *id.* at 1235.

As to the race-discrimination claim, the panel affirmed the district court's ruling that Slater failed to establish a prima facie case of discrimination because she did not identify a similarly-situated employee who was treated more favorably. *Id.* at 1196 n.3.

The panel also affirmed the district court's application of judicial estoppel, rejecting Slater's argument (Panel Br. 24-25, 28) that the court had "failed to give appropriate weight" to the "judicial acceptance" and "unfair advantage or prejudice" factors that the Supreme Court identified in *New Hampshire*.  *Slater*, 820 F.3d at 1200.   While acknowledging that the bankruptcy court had not accepted Slater's omission in a discharge order, the panel explained that requiring, "as a condition precedent to the application of judicial estoppel, the termination of the bankruptcy proceedings," would "'diminish the necessary incentive to provide

---

[3]    Slater has not appealed the merits-based dismissal of her sex-discrimination claims.  *See Slater v. U.S. Steel Corp.*, 820 F.3d 1193, 1196 n.3 (11th Cir. 2016) (*per curiam*), *vacated on grant of reh'g en banc*.

the bankruptcy court with a truthful disclosure'" at the outset. *Id.* at 1210 (quoting *Burnes*, 291 F.3d at 1288). The panel additionally held that the presence or absence of unfair advantage or prejudice was not dispositive in the bankruptcy context because that consideration can "apply only in a two-case setting, where the party asserting the doctrine was a party in the earlier proceeding." *Id.* at 1209.

In his special concurrence, Judge Tjoflat encouraged *en banc* review of this Court's judicial-estoppel precedents for several reasons. *First*, the special concurrence posited that, while historically judicial estoppel was intended to protect the "integrity of the judicial system" as a whole, "causi[ing] future debtors to make a full disclosure of their assets" will "protect the system in the Bankruptcy Court only." *Slater*, 820 F.3d at 1235-36.

*Second*, the special concurrence asserted that, while *Burnes* and *Barger* aim to "punish" untruthful debtors, judicial estoppel is ineffective in deterring debtors' dishonesty, as "relieving a thief of stolen property is unlikely to deter theft." *Id.* at 1239. The special concurrence further contended that, even if effective, judicial estoppel is an "inappropriate" tool to "punish oath-breaking debtors," *id.*, since the bankruptcy court may invoke its own "rules and statutory provisions" to deter and punish debtor dishonesty, *id.* at 1239-40.

*Third*, the special concurrence stated that judicial estoppel provides a "pure windfall" to defendants at the expense of creditors by barring claims that, if meritorious, could result in recovery for the bankruptcy estate. *Id.* at 1238, 1247.

*Finally*, the special concurrence concluded that *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004), conflicts with *Barger* insofar as it holds that a Chapter 7 trustee is not judicially estopped from pursuing a claim that the debtor had failed to disclose to the bankruptcy court. *Slater*, 820 F.3d at 1230-31.

Upon Slater's petition, this Court granted rehearing *en banc* and directed the parties to focus briefing on "[w]hether the doctrine of judicial estoppel as applied to *Barger v. City of Cartersville*, 348 F.3d 1289, 1296 (11th Cir. 2003), and *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002), should be overruled." ECF 40.

## SUMMARY OF ARGUMENT

**I.**     This Court should adhere to its holdings in *Burnes* and *Barger* that judicial estoppel may bar a debtor from asserting a legal claim in district court that the debtor intentionally concealed from a bankruptcy court.  This Court's holdings followed from a broad consensus among the courts of appeals  and have since been followed by numerous other courts, both inside and outside this Circuit.  Departing from this long-standing precedent would create a needless circuit split and conflict with principles of *stare decisis*.

16

*Burnes* and *Barger*, moreover, correctly apply each of the three judicial-estoppel factors that the Supreme Court identified in *New Hampshire*. *First*, the debtor's position in bankruptcy court that a claim does not exist is clearly inconsistent with its assertion of the same claim in district court. *Second*, the bankruptcy court accepts the debtor's position when it relies on the debtor's asset disclosures omitting a claim—whether at a preliminary stage of the bankruptcy or in a final discharge order or plan confirmation. *Third*, a debtor gains an unfair advantage over both creditors and defendants by preventing the undisclosed claim from being available to repay creditors and subjecting defendants to lawsuits that the debtor has no right to assert.

*Burnes* and *Barger* are also consistent with *New Hampshire* in declining to apply judicial estoppel where a party's inconsistency results from mistake or inadvertence. Under these decisions, a debtor's knowledge of her legal claim, omission of that claim from an asset schedule requiring its disclosure, and motive to withhold that asset from creditors, taken together, may support an *inference* that the debtor's concealment was intentional. This standard requires case-specific determinations and does not create any presumption of intent. It thus fairly and flexibly allows a finding of mistake or inadvertence where the record supports one.

Finally, criticism of *Burnes* and *Barger* on policy grounds is misplaced. Those decisions protect the integrity of both the district courts and the bankruptcy

17

courts.  They protect district courts by barring debtors from pursuing claims they have elsewhere represented do not exist.  They protect bankruptcy courts by encouraging the truthful disclosures on which the bankruptcy system depends. Those decisions also are fair to both debtors and creditors:  they do not penalize debtors who act in good faith, and any risk they impose that a creditor may lose the value of a debtor's claim is the same risk creditors face for other assets.  Finally, *Burnes* and *Barger* promote the sound administration of justice by discouraging debtor dishonesty and deterring wasteful district court proceedings.

II.    Alternatively, this Court should affirm the district court's order granting summary judgment to U.S. Steel on the merits of Slater's claim for race discrimination based on disparate treatment regarding the transfer of service time. The undisputed record shows that Slater failed to identify a similarly-situated employee who was treated more favorably than she was:  the alleged similarly-situated employee was *not* a transfer employee and thus was not a proper basis for comparison.

<u>**STANDARD OF REVIEW**</u>

This Court "review[s] the district court's application of judicial estoppel for abuse of discretion." *Robinson*, 595 F.3d at 1273.[4]  "An abuse of discretion review

---

[4]    Nearly every other court of appeals likewise applies this deferential standard of review.  *See Marshall v. Honeywell Tech. Sys. Inc.*, 828 F.3d 923, 928 (D.C. Cir.

18

requires [this Court] to affirm unless [it] find[s] that the district court has made a clear error of judgment, or has applied the wrong legal standard." *Id.* (internal quotation marks omitted). Where the district court infers that the "estopped party's contradiction [was] intentional," this inference is considered a "factual finding by the court" and is reviewed for "clear error." *Id.* at 1273, 1275.

This Court reviews *de novo* a district court's order granting summary judgment on the merits of an employment-discrimination claim. *See, e.g.*, *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1184 n.1 (11th Cir. 2016).

## ARGUMENT

## I. *BURNES* AND *BARGER* PROVIDE THE CORRECT STANDARD FOR JUDICIAL ESTOPPEL IN THE BANKRUPTCY CONTEXT

### A. *Burnes* And *Barger* Follow Longstanding Precedent In This And Other Circuits

This Court should reaffirm its holdings in *Burnes* and *Barger* that judicial estoppel may bar a debtor from asserting a legal claim in district court that she intentionally concealed from a bankruptcy court. To reverse that precedent would

---

2016); *Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 270 (9th Cir. 2013); *In re Knight-Celotex, LLC*, 695 F.3d 714, 721 (7th Cir. 2012); *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012); *Guay v. Burack*, 677 F.3d 10, 15 (1st Cir. 2012); *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007); *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1046 (8th Cir. 2006); *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 (3d Cir. 2001); *King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998). *But see White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (applying *de novo* review).

19

set this Court apart from every other court of appeals to have addressed the application of judicial estoppel in this context and would upend decades of this Court's precedent in contravention of principles of *stare decisis*.

Judicial estoppel "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 749-50 (internal citation and quotation marks omitted); *see id.* at 750 ("judicial estoppel prevents parties from 'playing fast and loose with the courts'") (quoting *Scarano v. Cent. R.R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953)). *Accord Davis v. Wakelee*, 156 U.S. 680, 689 (1895).

For nearly a half-century, this Court has recognized "two primary factors" in determining whether a party's inconsistency warrants judicial estoppel. *Robinson*, 595 F.3d at 1273. "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Salomon Smith Barney, Inc. v. Harvey, M.D.*, 260 F.3d 1302, 1308 (11th Cir. 2001) (citing *McKinnon v. Blue Cross & Blue Shield of Ala.*, 935 F.2d 1187, 1192 (11th Cir. 1991), and *Johnson Serv. Co. v. TransAmerica Ins. Co.*, 485 F.2d 164, 174 (5th Cir. 1973)), *vacated on other grounds*, 537 U.S. 1085 (2002).

In *Burnes* and again in *Barger*, this Court applied this judicial-estoppel standard to the bankruptcy context and held that judicial estoppel may bar a debtor "from asserting any claims for monetary damages" "because of his failure to disclose the claims in his concurrent bankruptcy proceedings." *Burnes*, 291 F.3d at 1283, 1285; *see Barger*, 348 F.3d at 1296 ("In light of *Burnes* and *DeLeon* [*v. Comcar Indus., Inc.*, 321 F.3d 1289 (11th Cir. 2003)], it is difficult to argue that Barger should not be judicially estopped from asserting the discrimination claims she failed to disclose in her bankruptcy petition.").

In so holding, this Court joined the consensus view of five other Circuits that had previously considered the question. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001) (holding that plaintiff was "precluded from pursuing claims about which he had knowledge, but did not disclose, during his bankruptcy proceedings"); *United States ex rel. Gebert v. Transp. Admin. Servs.*, 260 F.3d 909, 917 (8th Cir. 2001) (holding that debtors' "failure to disclose the existence of the [qui tam] claims as a contingent asset of the bankruptcy estate warrants the imposition of judicial estoppel") (alteration in original; internal quotation marks omitted); *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) (joining "[c]ourts in numerous cases [that] have precluded debtors or former debtors from pursuing claims about which the debtors had knowledge, but did not disclose, during the debtors' bankruptcy proceedings"); *Payless Wholesale*

21

*Distribs. Inc. v. Alberto Culver, (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993) (holding that a debtor "having obtained judicial relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis"); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 418-19 (3d Cir. 1988) (applying judicial estoppel because a debtor's "failure to list its claim against the bank worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect").[5]

Other courts of appeals have since held—in reliance on *Burnes* and *Barger*—that judicial estoppel applies against debtors who conceal legal claims for

---

[5] Even prior to *Burnes*, district courts in this Circuit had "join[ed] the multitude of courts recognizing the doctrine of judicial estoppel as a bar to a debtor's assertion of a claim not identified as an asset in an earlier bankruptcy proceeding." *Chandler v. Samford Univ.*, 35 F. Supp. 2d 861, 864 (N.D. Ala. 1999). *Accord Scoggins v. Arrow Trucking Co.*, 92 F. Supp. 2d 1372 (S.D. Ga. 2000).

Additionally, though not always treated as a question of judicial estoppel, the principle that a debtor may not conceal a claim in bankruptcy and later pursue it in litigation has roots nearly as old as modern bankruptcy laws themselves. *See First Nat'l Bank v. Lasater*, 196 U.S. 115, 119 (1905) (barring debtor from pursuing claims that had not been disclosed in bankruptcy because "[i]t cannot be that a bankrupt, by omitting to schedule and withholding from his trustee all knowledge of certain property, can, after his estate in bankruptcy has been finally closed up, immediately thereafter assert title to the property on the ground that the trustee had never taken any action in respect to it."). The consensus of applying judicial estoppel in these circumstances arose after the enactment of the Bankruptcy Code of 1978, Pub. L. 95-598, 92 Stat. 2549 (Nov. 6, 1978), which codified debtor's disclosure obligations at 11 U.S.C. §§ 521, 541, and 1125. *See Burnes*, 291 F.3d at 1286; *Coastal Plains*, 179 F.3d at 208; *Payless*, 989 F.2d at 571 n.3; *Oneida*, 848 F.2d at 417.

damages in bankruptcy.[6]  Thus, today, "every circuit that has addressed the issue has found that judicial estoppel is justified to bar a debtor from pursuing a cause of action in district court where that debtor deliberately fails to disclose the pending suit in a bankruptcy case."  *Moses*, 606 F.3d at 789 (D.C. Cir. 2010) (collecting cases).  In this Circuit and others, *Burnes* has become a foundational precedent in "shap[ing] the application of post-bankruptcy judicial estoppel into a flexible tool to preserve the integrity of the bankruptcy system" and to "create[] a doctrine capable of accommodating each of a wide variety of cases…."  Eric Hilmo, *Bankrupt Estoppel:  The Case for A Uniform Doctrine of Judicial Estoppel As Applied Against Former Bankruptcy Debtors*, 81 FORDHAM L. REV. 1353, 1390-91 (2012).

---

[6]  *See Marshall*, 828 F.3d at 930, 932 (D.C. Cir.); *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 548 (7th Cir. 2014); *Kimberlin v. Dollar Gen. Corp.*, 520 F. App'x 312, 314-15 (6th Cir. 2013); *White*, 617 F.3d at 481 (6th Cir.); *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010); *Eastman*, 493 F.3d at 1158 (10th Cir.); *Matthews v. Potter*, 316 F. App'x 518, 524 (7th Cir. 2009); *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006); *Biesek v. Soo Line R. Co.*, 440 F.3d 410, 412 (7th Cir. 2006); *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 426, 427 (6th Cir. 2005); *Valentine-Johnson v. Roche*, 386 F.3d 800, 812 (6th Cir. 2004).  *See also Love*, 677 F.3d at 266 (5th Cir.); *Guay*, 677 F.3d at 19 (1st Cir.); *Strong v. Am.'s Ctr. Food Serv. Partners/Levy Rest. Ltd. P'ship,* 189 F. App'x 587, 587 (8th Cir. 2006); *Stallings,* 447 F.3d at 1048 (8th Cir.); *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335, 336 (5th Cir. 2004); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003).

This Court should not lightly upend this overwhelming line of settled precedent. *See, e.g.*, *Public Health Tr. of Dade Cty., Fla. v. Lake Aircraft, Inc.*, 992 F.2d 291, 295 n.4 (11th Cir. 1993) ("We do not create intercircuit splits lightly."); *United States v. Walker*, 198 F.3d 811, 812 (11th Cir. 1999) (similar). The Court should instead adhere to and reaffirm its holdings in *Burnes* and *Barger* that judicial estoppel may apply to debtors who have concealed their claims from a bankruptcy court. To do otherwise would create a needless split between this Court and every other circuit that has addressed this issue. The consensus among the courts of appeals on this issue strongly suggests that *Burnes* and *Barger* are correct. Moreover, at least 27 panels of this Court have followed *Burnes*—"[t]he seminal case in the Eleventh Circuit on the theory of judicial estoppel," *Robinson*, 595 F.3d at 1273—and/or *Barger*, and dozens of district courts have applied the judicial-estoppel standard from those decisions in the bankruptcy context. *See Slater*, 820 F.3d at 1251-52 (Appendix II to special concurrence). Principles of *stare decisis* thus also strongly counsel against upsetting the law of this Circuit. *See McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) ("courts should not lightly overrule past decisions…," because "[s]tability and predictability are essential factors in the proper operation of the rule of law") (internal citations and quotation marks omitted).

24

### B.  *Burnes* And *Barger* Correctly Apply *New Hampshire* To Debtors Who Conceal Claims From The Bankruptcy Court

The Supreme Court's decision in *New Hampshire* further confirms the correctness of this Court's application of judicial estoppel in the bankruptcy context.  Slater's arguments to the contrary (Br. 15-21, 24-29) are unavailing.

*New Hampshire* held that judicial estoppel barred New Hampshire from taking a position in a border dispute with Maine that was inconsistent with its position in prior litigations.  532 U.S. at 751-56.  In so holding, the Supreme Court observed that "'the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle'" but identified three factors "typically" relevant to deciding whether to apply judicial estoppel:  (1) whether the party's "later position [is] clearly inconsistent with [the party's] earlier position"; (2) whether the party "succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."  *Id.* at 750-51 (internal citations and quotation marks omitted).  The Court emphasized that these considerations were neither "inflexible prerequisites [n]or an exhaustive formula" and that "[a]dditional considerations may inform the doctrine's application in specific

25

factual contexts." *Id.* at 751.  The Court also accepted that, regardless of the above considerations, "it may be appropriate to resist application of judicial estoppel 'when a party's prior position was based on inadvertence or mistake.'"  *Id.* at 753 (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995)).

In *Burnes*, this Court held that "the two [judicial-estoppel] factors applied in the Eleventh Circuit are consistent with the Supreme Court's instructions" in *New Hampshire* because those factors "are not inflexible or exhaustive" and they "provide courts with sufficient flexibility in determining the applicability of the doctrine of judicial estoppel based on the facts of a particular case."  *Burnes*, 291 F.3d at 1285-86.  As this Court later explained, *Burnes* thus "incorporate[d] the standards enumerated by the Supreme Court" into this Court's pre-existing "two primary factors."  *Robinson*, 595 F.3d at 1273; *see Ajaka v. Brooksamerica Mortg. Corp.*, 453 F.3d 1339, 1344 (11th Cir. 2006) (noting that "we *begin* with a consideration of [the] two primary factors," and also applying *New Hampshire* factors) (emphasis added).

Accordingly, as explained below, there is no tension, let alone conflict, between the considerations the Supreme Court identified in *New Hampshire* and this Court's holdings in *Burnes*, *Barger*, and their progeny that a debtor's deliberate concealment of claims from a bankruptcy court may bar the pursuit of

those claims in district court.  To the contrary, those holdings reflect a sound application of the doctrine of judicial estoppel as elaborated in *New Hampshire*.

### 1.    A Debtor Takes "Clearly Inconsistent" Positions By Asserting Claims In District Court That The Debtor Concealed From A Bankruptcy Court

Slater does not contest that the first *New Hampshire* factor—"clearly inconsistent" positions, 532 U.S. at 750—is satisfied here.  A debtor who "represented in the bankruptcy case that no claim existed" takes an inconsistent position by "representing in the lawsuit [in district court] that a claim *does* exist." *Ah Quin*, 733 F.3d at 271.  Thus, as this Court has recognized, the first *New Hampshire* factor favors judicial estoppel in the context of an omission to disclose a district-court claim to a bankruptcy court.  *See, e.g.*, *Ajaka*, 453 F.3d at 1344 ("Because there is no question that [the plaintiff] failed to assert his TILA claim as an asset in the bankruptcy proceeding, the first prong of our judicial estoppel test is satisfied.").[7]

---

[7]    Amicus National Association of Consumer Bankruptcy Attorneys ("NACBA") wrongly suggests (Br. 9-12) that *Burnes* and *Barger* create a trap for Chapter 13 debtors by requiring them to provide "real-time" financial disclosures of claims that arise *after* the debtor files the bankruptcy petition.  *Burnes* and *Barger* do no such thing; rather, they reiterate that a debtor with a pending claim *at the time of the petition* must disclose that claim in the petition.  *Burnes*, 291 F.3d at 1285-86; *Barger*, 348 F.3d at 1295-96.  This obligation flows from the Bankruptcy Code's requirement to disclose *pre-petition* pending and contingent claims, *see Ajaka*, 453 F.3d at 1344 ("A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court") (citing 11 U.S.C. §§ 521(1),

### 2.    A Bankruptcy Court Accepts A Debtor's Position When It Relies At Any Stage Of A Bankruptcy Proceeding On A Representation That No Claim Exists

Contrary to Slater's argument (Br. 17-21), this Court's judicial-estoppel standard properly reflects the second *New Hampshire* factor—"whether the party has succeeded in persuading a court to accept that party's earlier position," 532 U.S. at 750—even though the bankruptcy court did not issue a final discharge order in reliance on her false asset disclosures.  Judicial acceptance is not an "inflexible prerequisite" to the application of judicial estoppel, *id.*, and in any event this Court's judicial-estoppel standard in fact "incorporat[es]" that factor, *Robinson*, 595 F.3d at 1273; *see supra*, at 26, which the district court and panel properly applied in the circumstances here.

No court has held a bankruptcy-court discharge order *necessary* to find judicial acceptance under the second factor, although many have deemed it *sufficient*.[8]  There are many ways short of a discharge or plan-confirmation order in

---

541(a)(7)), not some requirement to disclose assets acquired *after* the petition was filed.  In any event, here, Slater filed her lawsuit *before* she filed for bankruptcy (*see supra*, at 5-8), and there is thus no dispute that she was required to disclose her claims in her bankruptcy petition.

[8]    *See, e.g.*, *Hamilton*, 270 F.3d at 784 ("discharge of debt by a bankruptcy court … is sufficient acceptance to provide a basis for judicial estoppel"; "Our holding does not imply that the bankruptcy court must actually discharge debts before the judicial acceptance prong may be satisfied.").  *Accord Marshall*, 828 F.3d at 928; *Queen v. TA Operating, LLC*, 734 F.3d 1081, 1090, 1092 (10th Cir. 2013); *Guay*,

which a bankruptcy court may rely on, and therefore accept, a debtor's asset disclosures as true.  For example, other courts of appeals have held that a bankruptcy court accepted a debtor's false disclosures at various preliminary stages of a bankruptcy proceeding, including in an interim order lifting the automatic stay, *Coastal Plains*, 179 F.3d at 210; upon confirmation of a temporary reorganization plan, *Williams v. Hainje*, 375 F. App'x 625, 627 (7th Cir. 2010); and by implementation of the automatic stay upon the debtor's filing of a bankruptcy petition, *id.  See generally Coastal Plains*, 179 F.3d at 206 (judicial acceptance may be established where bankruptcy court adopts debtor's asset disclosures as true "'either *as a preliminary matter* or as part of a final disposition'") (emphasis added) (quoting *Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir. 1988)).

And it is entirely sensible that judicial acceptance will often occur at early stages of a bankruptcy proceeding.  Because a debtor's mandatory disclosures are the basis upon which the bankruptcy court manages a case, "[f]ull and honest disclosure in a bankruptcy case" is required at even its earliest stages.  *Burnes*, 291 F.3d at 1286; *see infra*, at 44-47.  Thus, as the panel in this case explained, long before a debtor's discharge, his or her deception has "already performed its odious

---

677 F.3d at 18; *White*, 617 F.3d at 479; *Cannon-Stokes*, 453 F.3d at 448; *Superior Crewboats*, 374 F.3d at 335.

service, undermining the orderly administration of justice in his bankruptcy case." *Slater*, 820 F.3d at 1209.

Here, judicial acceptance in the bankruptcy court occurred at least two times over. *First*, based on its review of Slater's petition, including her asset disclosures, the bankruptcy court designated the proceeding as a "no asset" case pursuant to Bankruptcy Rule 2002(e) and, accordingly, issued a notice to creditors on Official Form 9A ("Chapter 7 Individual or Joint Debtor No Asset Case") advising them of such. Bankr.Dkt.7; *see supra*, at 8-9. Accepting Slater's representations as to the absence of any non-exempt assets, the bankruptcy court directed creditors not to file any proofs of claims. Bankr.Dkt.7 at 2. Slater's case thus proceeded on an expedited track based on her false representations.

*Second*, Slater's false asset disclosures were the basis for the bankruptcy trustee's recommendation of a no-asset discharge in his Chapter 7 Report Of No Distribution. Bankr.Dkt.13. The trustee's report expressly accepted and relied on Slater's asset schedules, stating "that there is no property available for distribution from the estate over and above that exempted by law" and "that the estate of [Slater] has been fully administered." *Id*. And when the trustee learned that Slater had failed to disclose her discrimination claims, he withdrew his Report Of No Distribution (Bankr.Dkt.20), thus reinforcing that he had in fact previously accepted Slater's representation that no such claims existed.

30

A Chapter 7 "trustee's report of no distribution [is sufficient] to show that [a debtor's] representations were accepted by the bankruptcy court," *Dzakula v. McHugh*, 2011 WL 1807241, *3 (N.D. Cal. Apr. 22, 2011), *aff'd*, 746 F.3d 399, 402 (9th Cir. 2013) ("the bankruptcy court was misled by Plaintiff's omission"). Indeed, it is well established that "those performing duties in the administration of an estate," including bankruptcy trustees, do so "as officers of the court." *In re Jefferson Cty., Ala.*, 484 B.R. 427, 460 (Bankr. N.D. Ala. 2012); *see Lawrence v. Goldberg*, 573 F.3d 1265, 1269 (11th Cir. 2009) (bankruptcy trustees function "'as the equivalent of court appointed officers'") (quoting *Carter v. Rodgers*, 220 F.3d 1249, 1252 n.4 (11th Cir. 2000)); *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 884 (11th Cir. 1990) ("The trustee and his representatives are officers of the court.").   Trustees fulfill this role under the supervision of the bankruptcy court and the U.S. Trustee or bankruptcy administrator for their jurisdiction.   *See* 28 U.S.C. § 586(a)(3); FED. R. BANKR. P. 9035 adv. comm. n. (1991).[9]  Bankruptcy trustees are thus an essential component of the adjudication

---

[9]   Since a U.S. Trustee is not authorized to act in the Northern District of Alabama, a bankruptcy administrator, who is an officer of the Judicial Branch, supervises the administration of estates and trustees in that District.   *See* http://www.uscourts.gov/services-forms/bankruptcy/trustees-and-administrators.

of a bankruptcy case, and their actions in reliance on a debtor's representations in asset disclosures are sufficient to establish judicial acceptance.[10]

Furthermore, by rule, a bankruptcy court presumptively adopts a trustee's final report if no objection is filed within 30 days—further establishing judicial acceptance here. *See* FED. R. BANKR. P. 5009(a); 19-CS23 Collier on Bankruptcy § CS23.21[4] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("the court may discharge the trustee and close the case … without the need to review the final report and account or to determine the merits of the trustee's certification that the estate has been fully administered"). When Slater filed her amended schedules, over 30 days had passed since the trustee filed his report, with no objections filed. *See supra*, at 9-10. The bankruptcy court's presumptive adoption of the trustee's report prior to that amendment further shows judicial acceptance of Slater's representations that her estate included no legal claims.

Finally, even if more were required for the bankruptcy court to have accepted her representations, Slater is incorrect to assume (Br. 14-16, 23-24) that judicial estoppel would be inapplicable here. Judicial acceptance is not a "'inflexible prerequisite[]" to estoppel. *New Hampshire,* 532 U.S. at 750. And

---

[10]    Bankruptcy trustees are treated as performing a judicial function for other purposes as well—they have, for example, "absolute quasi-judicial immunity" for their acts in managing an estate. *See, e.g.*, *SEC v. N. Am. Clearing, Inc.*, 2016 WL 3878481, *3 (11th Cir. July 18, 2016).

rightly so: requiring a discharge or case-terminating order as a prerequisite to application of judicial estoppel in the bankruptcy context would create a harmful incentive for defendants to delay notifying district courts of debtors' inconsistent position in bankruptcy court—a result that would prolong the very misuse of the judicial process that judicial estoppel seeks to remedy. A district court thus should remain able to exercise its discretion to apply judicial estoppel even where a bankruptcy court has not yet accepted a debtor's misrepresentations through discharge or similar action.

### 3.    A Debtor Who Conceals Claims From A Bankruptcy Court Gains An Unfair Advantage

Slater does not directly challenge the third *New Hampshire* factor—"whether the party … would derive an unfair advantage or impose an unfair detriment" through her inconsistency, 532 U.S. at 751—but it further supports judicial estoppel in the bankruptcy context. A debtor who misrepresents her assets gains an unfair advantage over both creditors and defendants. In the bankruptcy proceeding, such debtors unfairly prevent the undisclosed assets from being available to repay creditors. And in the district court proceeding, such debtors unfairly subject defendants to lawsuits that the debtors have no right to assert.[11]

---

[11]    The panel suggested that the third *New Hampshire* factor has no application unless, unlike here, "the party asserting the doctrine was a party in the earlier proceeding." *Slater*, 820 F.3d at 1200. But, as discussed in text, that factor does

33

These unfair advantages are not excused by a debtor's subsequent correction of her asset disclosures.  As this Court explained in *Burnes*, allowing a debtor to

> amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets.

*Burnes*, 291 F.3d at 1288; *see Guay*, 677 F.3d at 21 (holding, in reliance on *Burnes*, that debtor's amendment of disclosures to correct omission was insufficient to avoid judicial estoppel); *Love*, 677 F.3d at 265 (same); *Moses*, 606 F.3d at 800 (same); *Superior Crewboats*, 374 F.3d at 336 (same); *Krystal Cadillac*, 337 F.3d at 321 (same).  *But see Ah Quin*, 733 F.3d at 276 (holding that debtor's reopening to correct disclosures to include previously-omitted claim is relevant to determining debtors' intent).  That same reasoning is fully applicable here: Slater's amendment of her disclosures after being caught cannot negate the unfair advantages she would have received had she successfully concealed her claims from the bankruptcy court.

---

support judicial estoppel here because Slater sought an unfair advantage through her inconsistent statements.

34

### 4.    A Debtor's Knowledge Of A Claim And Motive To Conceal It Support An Inference Of Intentional Nondisclosure

Slater (Br. 21-24) and amicus NACBA (Br. 27-28) fare no better in contesting this Court's standard under *Burnes* and *Barger* for determining whether a debtor's nondisclosure of legal claims is the result of mistake or inadvertence (and thus an inappropriate basis for judicial estoppel).  This Court's standard is both logical and fully consistent with the precedent of other courts of appeals—as the undisputed facts of this case demonstrate.

In *Burnes*, this Court joined the holdings of "several circuits, in considering the particular issue of judicial estoppel and the omission of assets in a bankruptcy case, … that deliberate or intentional manipulation can be inferred from the record."  291 F.3d at 1287 (citing *Coastal Plains*, 179 F.3d at 210; *Payless*, 989 F.2d at 571; *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 363 (3d Cir. 1996); *Oneida*, 848 F.2d at 419).  And it adopted the holding of the Fifth and First Circuits that a "'debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.'"  *Id.* (quoting *Coastal Plains*, 179 F.3d at 210; citing *Payless*, 989 F.2d at 570).  Based on a record showing that the debtor "had knowledge of his claims during the bankruptcy proceedings" and that his motive to conceal was clear from the fact that "disclosing [his claim] would have likely changed the result of his bankruptcy,"

this Court upheld the district court's finding that the debtor had not mistakenly or inadvertently failed to disclose his claims.  *Id.* at 1288.[12]

In *Barger*, this Court applied *Burnes* to affirm the application of judicial estoppel where a debtor had not disclosed employment-discrimination claims in her bankruptcy petition and later informed the bankruptcy trustee only of her request for reinstatement (which, as a form of injunctive relief, is not an asset of the bankruptcy estate) and not for backpay (which is an asset of the bankruptcy estate).  This Court reiterated that a debtor's non-disclosure may be excused as inadvertent "'only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.'"  348 F.3d at 1296 (quoting *Burnes*, 291 F.3d at 1287).  And it concluded that the debtor there had clear knowledge of her claims (having discussed them in part with the trustee) and a motive to conceal them so that "she could keep any proceeds for herself and not have them become part of the bankruptcy estate."  *Id.* at 1296.

---

[12]    Slater wrongly asserts (Br. 21-23) that in *Burnes* this Court "misapplied the rationale" of the Fifth Circuit's decision in *Coastal Plains*.  There is no conflict with *Coastal Plains*.  Both *Burnes* and *Coastal Plains* considered intent because "judicial estoppel applies in situations involving intentional contradictions, not simple error or inadvertence."  *Burnes*, 291 F.3d at 1286; *see Coastal Plains*, 179 F.3d at 206 (judicial estoppel is generally applied based on "intentional self-contradiction").  And in holding that inadvertence for this purpose requires showing lack of knowledge of a claim or motive to conceal it, this Court adopted the same standard as applied in *Coastal Plains*.  *Compare Burnes*, 291 F.3d at 1287, *with Coastal Plains*, 179 F.3d at 206.

These holdings reflect the common-sense notion that a debtor's knowledge of her legal claim, omission of that claim from an asset schedule requiring its disclosure, and motive to withhold that asset from creditors, taken together, support an inference that the debtor seeks to make a mockery of the judicial process by not disclosing a claim in bankruptcy while pursuing that same claim in litigation.  Indeed, no fewer than five circuits agree with this Court that a debtor's intentional omission of a claim from bankruptcy schedules may be inferred from evidence of knowledge and motive.  *See Dzakula*, 746 F.3d at 401; *Love*, 677 F.3d at 267-68; *White*, 617 F.3d at 478; *Eastman*, 493 F.3d at 1156; *Krystal Cadillac*, 337 F.3d at 321.[13]

This standard is also fair and reasonable with respect to plaintiffs.  It does not, as NACBA incorrectly argues (Br. 6-7), result in an "automatic" finding of intent to deceive.  Rather, this Court has maintained that such an inference of intent requires an evaluation of the facts and circumstances of each case.  *See, e.g.*, *Burnes*, 291 F.3d at 1286-87 ("judicial estoppel applies in situations involving

---

[13]    Amicus NACBA's argument (Br. 23, 27) that this Court should "temper" its judicial estoppel doctrine to preclude an inference of intent as a matter of law thus would create a circuit split, likely requiring an evidentiary hearing as to intent in most cases—a position the Ninth Circuit has expressly rejected.  *See Dzakula*, 746 F.3d at 401 ("We disagree" with rule that would "mandate[] an evidentiary hearing [to determine the debtor's intent] any time a plaintiff-debtor omits a claim on his or her bankruptcy schedules and later amends those schedules.").

intentional contradictions, not simple error or inadvertence" and holding that "the record in this case contain[ed] sufficient evidence from which to infer intentional manipulation").[14]

Nor is NACBA correct to suggest (Br. 27) that this standard creates an "insurmountable presumption of intent." To the contrary, this Court has made clear that knowledge and motive give rise to an inference, not a presumption, and thus that, "courts must 'take into account all of the circumstances of each case in making [a] determination'" on judicial estoppel. *Ajaka*, 453 F.3d at 1344 (quoting *Palmer & Cay, Inc. v. Marsh & McLennan Cos.*, 404 F.3d 1297, 1307 n.17 (11th Cir. 2005)); *see Burnes*, 291 F.3d at 1286 (courts must "determin[e] the applicability of the doctrine of judicial estoppel based on the facts of a particular case").

Moreover, in application, the knowledge-plus-motive standard permits determination of a debtor's intent based on the facts of each case. This Court, for example, has reversed an order applying judicial estoppel on the very grounds that the record as a whole did not support a finding of intent. *See Ajaka*, 453 F.3d at

---

[14]    Similarly, the cases on which *Burnes* relied recognized that intent is a fact-specific inquiry. *See Oneida*, 848 F.2d at 419 ("we stop short of finding that … [the debtor's] prior silence is equivalent to an acknowledgement that it did not have a claim"); *Ryan Operations*, 81 F.3d at 363 (declining to apply judicial estoppel in absence of "evidence in the record from which an inference of deliberate manipulation could be drawn").

1346 ("there exists a question of material fact as to whether [the debtor] had the motivation and intent to manipulate the judicial system"). And district courts in this Circuit not infrequently conclude that the record in a particular case does not support a finding of intent.[15] The knowledge-plus-motive standard thus does not prevent district courts from undertaking a case-specific analysis of a debtor's intent.

This case illustrates why this Court's standard for determining intent rightly focuses on the debtor's knowledge and motive. Here, the district court reasonably found that Slater knew of her claim: she filed for bankruptcy only a month after

---

[15]    *See, e.g.*, *Moorer v. Rooms to Go Ala. Corp.*, 2015 WL 4426085, *10 (N.D. Ala. July 20, 2015) (declining to apply judicial estoppel where "plaintiff listed this lawsuit in his third Chapter 13 bankruptcy filing before defendant raised a judicial estoppel argument"); *Marshall v. Sandersville R.R. Co.*, 2015 WL 3648603, *6 (M.D. Ga. June 10, 2015) ("the Court, … cannot find … that Marshall intended to make a mockery of the judicial system"); *Smith v. Werner Enters., Inc.*, 65 F. Supp. 3d 1305, 1310 (S.D. Ala. 2014) ("other facts may appear in the record taking a particular case out of the general and supporting a determination that, despite knowledge and motive, the plaintiff did not harbor an intent to make a mockery of the judicial system"); *Bennett v. Flagstar Bank*, 2011 WL 6152940, *4 (S.D. Ga. Dec. 8, 2011) (declining to apply judicial estoppel where defendant "has not presented any facts to support an inference of motive"); *Farr v. Hall Cty., Ga.*, 2011 WL 5921462, *9 (N.D. Ga. Nov. 28, 2011) ("the Court finds that there is insufficient evidence that Plaintiff had the requisite intent or motive to meet the second prong" for judicial estoppel); *Wheeler v. Fla. Dep't of Corr.*, 2006 WL 2321114, *6 (M.D. Fla. Aug. 9, 2006) ("[T]his Court does not find any nefarious intent to dupe this Court by taking inconsistent positions designed to gain an unfair advantage."); *Spann v. DynCorp Tech. Servs., LLC*, 403 F. Supp. 2d 1082, 1087 (M.D. Ala. 2005) (finding that debtor "had no motive to conceal her … claims").

39

the district court denied summary judgment to U.S. Steel on certain of her claims and set a trial date.  Dkt.89 at 12; *see supra*, at 6-7.  And it reasonably found that she had a motive to conceal:  she did not disclose her claims until U.S. Steel exposed her omission, and even after her omission was revealed, she continued to try to retain these claims as her own by converting from a Chapter 7 bankruptcy to a Chapter 13 bankruptcy in which she was a debtor-in-possession.  Dkt.89 at 12-13; *see supra*, at 11.  Slater has never contested these findings or the facts on which they are based, and the district court reasonably inferred from those findings that Slater intended to conceal her claims.

Instead of contesting her knowledge or motive, Slater merely contended that her omission was based on a legal misunderstanding, asserting in her affidavit that she "did not understand the question" in the bankruptcy form and "thought that [she] was being asked about suits filed against [her]."  Dkt.78, Ex. 1.  But the plain language of the bankruptcy-initiating forms required disclosure of "*all* suits and administrative proceedings to which the debtor is … a party" (Dkt.68, Ex. B at 13 (emphasis added)) and "contingent and unliquidated claims *of every nature*" (*id.* at 8 (emphasis added)), rendering her supposed confusion implausible.[16]  And Slater

---

[16]    This Court rightly allows district courts not to credit debtors' affidavits asserting inadvertence where the record shows that such testimony is a sham.  *See, e.g.*, *Dunn v. Advanced Med. Specialties, Inc.*, 556 F. App'x 785, 789 (11th Cir.

ignores that she was represented by bankruptcy counsel when she filed her petition.
*See* Bankr.Dkt.1. "'[L]itigants are bound by the actions of their attorneys,'" *White*,
617 F.3d at 483-84 (quoting *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 427-28
(6th Cir. 2005)), and a debtor's "remedy for bad legal advice rests in malpractice
litigation," *Eastman*, 493 F.3d at 1159; *see Cannon-Stokes*, 453 F.3d at 449 ("bad
legal advice does not relieve the client of the consequences of her own acts");
*Barger*, 348 F.3d at 1295 (debtor's alleged legal misunderstanding "is no panacea"
for non-disclosure).  The district court properly applied judicial estoppel for these
reasons too.[17]

### C.  *Burnes* And *Barger* Rest On Sound Policy Considerations

#### 1.  *Burnes* And *Barger* Protect The Integrity Of The Judicial System

The purpose of judicial estoppel "is to protect the integrity of the judicial
process" and "prevent improper use of judicial machinery."  *New Hampshire*, 532
U.S. at 749-50 (internal quotation marks omitted).  This Court's judicial-estoppel

---

2014) (upholding finding that debtor's affidavit averring that she "believed that the
lawsuit had been included in her bankruptcy filings" was a "sham").

[17]    Slater also contends (Br. 27) that *Burnes* and *Barger* "eliminated the
exceptions" to judicial estoppel identified in *New Hampshire*, citing limitations on
applying judicial estoppel to States, *see New Hampshire*, 532 U.S. at 755-56.  But,
like this case, *Burnes* and *Barger* involved private debtor-plaintiffs and thus have
no bearing on the application of judicial estoppel to States.

standard, and its application in the bankruptcy context, fulfill this purpose by protecting the integrity of both district courts and bankruptcy courts.

### (a)    *Burnes* And *Barger* Protect The Integrity Of The District Court

Contrary to the suggestions of Slater (Br. 25-26) and the special concurrence (*see Slater*, 820 F.3d at 1237-38), the availability of judicial estoppel in the bankruptcy context protects not only the integrity of the *bankruptcy court* but also the integrity of the *district court*.

*First*, the availability of judicial estoppel in such circumstances ensures that district courts may protect the integrity of their proceedings by barring debtors from pursuing and potentially recovering on claims they have elsewhere represented do not even exist. In *New Hampshire*, the Supreme Court explained that judicial estoppel serves to prevent "the perception that *either* the first or the second court was misled." 532 U.S. at 743 (emphasis added). If a debtor fails to disclose a claim to the bankruptcy court, and later asserts it in district court, it may be that the bankruptcy court was misled. But if the debtor in fact thought the claim so valueless as to not disclose it in bankruptcy, it is the district court, not the bankruptcy court, that was misled. *See, e.g.*, *Moses*, 606 F.3d at 800 (holding that debtor "offended the integrity of the District Court by presenting himself as a proper party in that court on the basis of a position that was flatly inconsistent with the position taken in the bankruptcy proceedings"). The potential result—a public

42

perception that the district court was fooled into adjudicating a meritless claim that even the plaintiff admitted does not exist—threatens the integrity of the district court and warrants estoppel. *See, e.g.*, *Krystal Cadillac*, 337 F.3d at 325 (holding that "the integrity of both the bankruptcy process and the judicial process would suffer" absent application of judicial estoppel in bankruptcy context).

*Second*, judicial estoppel in the bankruptcy context protects the integrity of district court proceedings by preventing Chapter 7 debtors from manipulating their bankruptcies to end-run the standing doctrine applicable to their claims in district court. When a debtor enters Chapter 7 bankruptcy, any "pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it." *Parker*, 365 F.3d at 1272. By contrast, a Chapter 13 debtor "retains standing to pursue legal claims on behalf of the estate." *Crosby*, 394 F.3d at 1331 n.2. Absent any check from judicial estoppel, this distinction would encourage debtor-plaintiffs to play "fast and loose" in how they pursue their claims in district court. This case provides a textbook example: Slater's Chapter 7 bankruptcy filing deprived her of standing to pursue her pre-petition claims, including the claims that she had not disclosed to the bankruptcy court. Slater nevertheless continued to pursue those claims until U.S. Steel uncovered her lack of standing (*see* Dkt.66 at 2-3) and the bankruptcy trustee expressed the intent to take over the litigation so that any recovery could flow

43

directly to her creditors (Dkt.79). Slater then, without explanation, sought to convert her bankruptcy to a Chapter 13 proceeding (*see* Bankr.Dkt.39), which cured the standing issue and allowed her to continue to pursue her claims as a debtor-in-possession. Without the availability of judicial estoppel in such circumstances, plaintiffs like Slater would be able to make a mockery of the judicial process by using the bankruptcy case to manipulate standing and control over litigation in the district court "'according to the exigencies of the moment.'" *New Hampshire*, 532 U.S. at 750 (quoting *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)).

### (b)    *Burnes* And *Barger* Protect The Integrity Of The Bankruptcy Court

As Slater and the special concurrence do not contest, the availability of judicial estoppel in circumstances where a debtor conceals her legal claims from a bankruptcy court also protects the integrity of the bankruptcy court itself. "The Bankruptcy Code and Rules impose upon the bankruptcy debtors an express, affirmative duty to disclose all assets," and "[t]he interests of … the bankruptcy court, which must decide whether to approve the plan of reorganization on the [basis of the information the debtor discloses], [is] impaired when the disclosure provided by the debtor is incomplete." *Hamilton*, 270 F.3d at 785 (internal quotations and citation marks omitted). Thus, a debtor's "'[f]ull and honest

disclosure in a bankruptcy case is crucial to the effective functioning of the federal bankruptcy system." *Guay*, 677 F.3d at 19 (quoting *Burnes*, 291 F.3d at 1286).

Overrule of *Burnes* and *Barger* thus would inject grave mischief into the bankruptcy system, which is built upon the foundation of honest self-disclosure. A debtor who conceals a claim from the bankruptcy court abuses the bankruptcy system by taking advantage of the system's reliance on such accurate disclosures: "Conceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights. This is a palpable fraud…." *Payless*, 989 F.2d at 571; *see Cannon-Stokes*, 453 F.3d at 447 ("[The debtor] represented that she had no claim…; that representation had prevailed…. Now she wants to assert the opposite in order to win a second time. That satisfies the requirements of judicial estoppel."). It is thus unsurprising that every court of appeals to consider the issue agrees that it is proper to "invoke judicial estoppel to protect the integrity of the bankruptcy process." *Hamilton*, 270 F.3d at 785; *see Guay*, 677 F.3d at 19 ("the integrity of the bankruptcy process is sufficiently important that we should not hesitate to apply judicial estoppel"); *Krystal Cadillac*, 337 F.3d at 325 (holding that "the integrity of both the bankruptcy process and the judicial process would suffer" if judicial estoppel were not applied); *Coastal Plains*, 179 F.3d at 208 (noting that the "'integrity of the bankruptcy system depends on a full and honest disclosure by debtors of all their assets'") (quoting *Rosenshein v. Kleban*, 918 F.

Supp. 98, 104 (S.D.N.Y. 1996)); *Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 900 (6th Cir. 2004) (same).[18]

Contrary to amicus NACBA's argument (Br. 22-23) and the special concurrence's concerns (*see Slater*, 820 F.3d at 1227-28), a district court's use of judicial estoppel in these circumstances works in tandem with, not to the exclusion of, a bankruptcy court's authority to use sanctions to discourage and punish debtor dishonesty.  That authority includes reopening a bankruptcy case to correct the debtor's omission of an asset, 11 U.S.C. § 350(b), FED. R. BANKR. P. 5010; imposing monetary and non-monetary sanctions, FED. R. BANKR. P. 9011(c); and referring the debtor for criminal prosecution, *see* 18 U.S.C. §§ 152, 3057.  There is no reason to suppose those sanctions will be independently sufficient, but in any event, an Article III district court should not be stripped of power to police litigants

---

[18]  Slater and amicus NACBA do not contest that judicial estoppel deters misuse of the bankruptcy process, but the special concurrence contended that judicial estoppel is not an effective deterrent to debtor dishonesty because it only requires dishonest debtors to "g[i]ve up property that wasn't theirs." *Slater*, 820 F.3d at 1239.  That view, however, cannot be squared with the reality that "'[b]y making litigants choose one position irrevocably, the doctrine of judicial estoppel raises the cost of lying.'" *Cannon-Stokes*, 453 F.3d at 448 (quoting *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1428 (7th Cir. 1993)).  Indeed, like disgorgement remedies generally, removing the unfair benefit that dishonest debtors stand to gain reduces the incentive for debtors to be dishonest in the first instance. *Cf. F.T.C. v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996) ("'disgorgement is … designed to deprive a wrongdoer of his unjust enrichment and to deter others'") (quoting *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989)).

before it merely because an Article I bankruptcy court might undertake some additional measures to discourage a debtor's fraudulent conduct.  *Cf. Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 132 n.2 (1995) (Ginsburg, J., concurring) (noting Congress's assignment of "supervisory jurisdiction over bankruptcy cases to Article III courts").

In any event, judicial estoppel and bankruptcy-court sanctions are mutually reinforcing.  There is "value in redundancy."  *Ah Quin*, 733 F.3d at 293 (Bybee, J., dissenting).  While a bankruptcy judge may be better situated to catch and remedy debtors' misconduct in some situations, in other situations the district court may be, such as where the debtor's inconsistency is uncovered during the district court proceedings or where the party that discovers the fraud is not a creditor or other participant in the bankruptcy case.  *See, e.g.*, *Robinson*, 595 F.3d at 1272-73 (during discovery in district court action, defendant learned of debtor's failure to disclose claim in prior bankruptcy petition and informed district court).  This case serves to illustrate as much:  if U.S. Steel had not had an incentive to look for and report Slater's inconsistent positions to the district court, the fact that Slater was misleading two courts might never have been discovered or corrected.  Thus, any "redundancy created by applying judicial estoppel can only serve to amplify the deterrence of inaccurate disclosure already promoted by bankruptcy remedies."  *Ah Quin*, 733 F.3d at 293 (Bybee, J., dissenting).

47

And where the bankruptcy court forgives a debtor's omission of a claim, a district court need not "ignore a litigant's inconsistent position just because a bankruptcy court has done so." *Id*. As this Court has recognized, a rule that precludes judicial estoppel in such cases, thereby "[a]llowing [a debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary," would "diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets." *Burnes*, 291 F.3d at 1288; *see supra*, at 34.[19]

Deferring exclusively to the availability of bankruptcy remedies for dishonest debtors thus would gut the doctrine of judicial estoppel in the bankruptcy

---

[19]   Slater wrongly contends (Br. 29-31) that res judicata precludes application of judicial estoppel where the bankruptcy court has allowed amendment of a debtor's schedules to include the claim at issue.   There is no conflict between the bankruptcy court allowing amendment and the district court barring the claim subject to that amendment.   Allowing an amendment of the debtor's disclosures corrects the initial omission of a claim; it is not a judicial ruling as to the value of that claim or the debtor's right to pursue it or recover on it.

Thus, while events in the bankruptcy court may be relevant to the judicial-estoppel analysis, no court of appeals has precluded application of judicial estoppel based solely on the debtor's correction of her omission.   And though the Ninth Circuit alone has held that whether a debtor has "reopened the bankruptcy proceedings and has corrected the initial filing error" bears on the analysis of the debtor's intent, *Ah Quin*, 733 F.3d at 276, even that court agrees with the cross-circuit consensus that the reopening of the bankruptcy does not preclude application of judicial estoppel, *see Dzakula*, 746 F.3d at 401.

context and place this Court alone among the courts of appeals.  This Court should not head down that path.

### 2.    *Burnes* And *Barger* Are Fair To Both Debtors And Creditors

Further contrary to the special concurrence's suggestion, there is nothing unfair about using judicial estoppel in the bankruptcy context.  The special concurrence contends that district-court dismissal will wrongly "punish[] oath-breaking" debtors, "will cause [creditors] irreparable harm," and will create windfalls for defendants.  *Slater*, 820 F.3d at 1239, 1249.  None of those concerns is well-founded, and none warrants departing from existing precedent.  To the contrary, as applied in this Circuit, judicial estoppel is fair to both debtors and creditors, and protecting the integrity of the federal courts outweighs any benefit defendants may receive.

With respect to debtors, this Court's judicial-estoppel standard does not penalize debtors who act in good faith.  Rather, *Burnes* empowers district courts to consider debtors' intent, *see* 291 F.3d at 1286, and courts in this Circuit regularly exercise their discretion to decline to apply judicial estoppel where debtors are found to have acted in good faith, *see supra*, at 38-39.  But where, as here, the

district court concludes that the debtor acted intentionally in concealing her claim, judicial estoppel imposes no injustice on the debtor.[20]

Nor does judicial estoppel impose any undue prejudice on creditors; rather, creditors get the same chance for repayment as the Bankruptcy Code affords them with respect to other assets of the estate.  In the case of Chapter 7 bankruptcies, the debtor's lack of standing to pursue pre-petition claims preserves the trustee's option to pursue the claim on behalf of the estate and its creditors even if the debtor initially conceals that claim from the bankruptcy court.  *See Parker*, 365 F.3d at 1272.[21]  Judicial estoppel is implicated in Chapter 7 bankruptcies only

---

[20]    Slater also argues (Br. 32-33) that this Court's judicial-estoppel precedents harm debtors by depriving them of their jury-trial right.  Not so.  The Seventh Amendment preserves the "right of trial by jury" in "Suits at common law."  U.S. Const. amend. VII.  But the right to have a cause of action tried by a jury does not guarantee that a litigant's claim will reach trial.  Many barriers—from the statute of limitations to equitable doctrines like laches and estoppel to summary adjudication procedures—may prevent a claim from reaching trial without infringing a litigant's jury-trial right.  *See, e.g.*, *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 333 (1979) (holding that application of collateral estoppel to bar legal claim does not violate Seventh Amendment jury-trial right).

[21]    U.S. Steel agrees with amicus NACBA (Br. 20-21, 29) and the special concurrence (*Slater*, 820 F.3d at 1231) that the conflict between *Barger* and *Parker* should be resolved by holding that a Chapter 7 trustee may not be judicially estopped based on a debtor's concealment of a claim belonging to the bankruptcy estate.  *See Parker*, 365 F.3d at 1272 (Chapter 7 trustee who "never took an inconsistent position under oath with regard to [the] claim" at issue "cannot … be judicially estopped from pursuing it" by debtor's failure to disclose claim); *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) ("while [the debtor] himself was properly estopped for his dishonesty, his post-petition misconduct does not

where the trustee abandons the claim. In that circumstance, judicial estoppel would bar the claim, but because the claim was abandoned, only the debtor, and not the creditors, would have benefited from any proceeds if it were allowed to proceed. *See id.* (Chapter 7 trustee holds all rights over assets of bankruptcy estate "unless the asset is abandoned back to the debtor"); 11 U.S.C. § 554 (permitting trustee to abandon "any property of the estate that is burdensome to the estate or that is of inconsequential value").

In Chapter 13 bankruptcies, the situation is more complex, but no less fair to creditors. "Chapter 13 provides individual debtors with an alternative method, distinct from Chapter 7's liquidation method, for dealing with debts in bankruptcy," by "repay[in] their debts … according to an extension or composition plan funded out of future earnings." *Tidewater Fin. Co. v. Williams*, 498 F.3d 249, 265 (4th Cir. 2007). "'The benefit [of Chapter 13] to creditors is self-evident: their losses will be significantly less than if their debtors opt for straight bankruptcy.'" *Id.* (alteration in original) (quoting H.R. REP. NO. 595, at 117-18 (1977)). That is especially true in cases, like Slater's, where the Chapter 7

---

adhere to the [Chapter 7] Trustee"). Such a partial overruling of *Barger* would have no effect on this case, however, because Slater converted her bankruptcy to a Chapter 13 proceeding and thus only she, not the former Chapter 7 trustee of her estate, has standing to sue. *See Crosby*, 394 F.3d at 1331 n.2.

proceeding would result in a "no asset" discharge, but a Chapter 13 plan might provide for payments to creditors from future income.

On the other hand, creditors in Chapter 13 bear the risk that a debtor will be unable to make plan payments from their assets, as "[a] Chapter 13 bankruptcy leaves the individual debtor in control of its assets." *United States v. Edwards*, 595 F.3d 1004, 1009 n.1 (9th Cir. 2010) (citing 1 *Collier on Bankruptcy* ¶ 1.03[6] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.)); *see* 11 U.S.C. § 1306(b). Debtors may mismanage or dissipate their assets in many ways that may limit or otherwise affect their ability to make payments to creditors under a Chapter 13 plan. Losing the right to pursue a legal claim through dishonesty in bankruptcy disclosures is just one way that may happen. Thus, while judicial estoppel may reduce a debtor's ability to meet plan payments by barring her recovery on a legal claim, that risk is inherent in the deal creditors get under Chapter 13.

Finally, judicial estoppel is appropriate in the bankruptcy context, as in other contexts, even where its application may benefit undeserving defendants. *See, e.g.*, *Guay*, 677 F.3d at 19 ("the integrity of the bankruptcy process is sufficiently important that we should not hesitate to apply judicial estoppel even where it creates a windfall for an undeserving defendant"). But it is not true, as the special concurrence suggests, that defendants' benefit from judicial estoppel is a "pure

52

windfall," *Slater*, 820 F.3d at 1238, 1247, as defendants who report debtors' concealment of claims assist the judicial process by exposing abuses of the bankruptcy system.   Whatever incidental benefits some defendants may receive from judicial estoppel, those benefits are in all instances outweighed by the important role the doctrine plays in ensuring the integrity of the judiciary and the bankruptcy system.   *See Spaine*, 756 F.3d at 547 ("Courts do not apply judicial estoppel for the benefit of the defendant but try to protect courts and creditors from deception and manipulation.").

### 3.    *Burnes* And *Barger* Promote Sound Judicial Administration

As shown above, *Burnes* and *Barger* provide district courts in this Circuit, like their counterparts in other circuits, with substantial tools to protect the integrity of federal judicial proceedings and to ensure consistency of positions between bankruptcy courts and district courts.   Were those decisions overruled or limited and thus judicial estoppel eliminated or curtailed in the bankruptcy context, these protections would be lost—to the detriment of litigants, courts, and the federal judiciary as a whole.

For example, without the availability of judicial estoppel in the bankruptcy context, non-creditor defendants would lose any incentive to look for concealed claims.   This would result in windfall recoveries for debtors and wasteful district court proceedings on claims that debtors should be estopped from pursuing.

Likewise, absent judicial estoppel, the bankruptcy process would almost certainly become more protracted as debtors exploit opportunities to flip-flop from Chapter 7 to Chapter 13:  debtors would initially file under Chapter 7, conceal claims, and either (1) keep the value of their claims from creditors completely or (2) if caught, convert to a Chapter 13 proceeding in order to retain possession of the asset but without any concern that the district court could preclude them from pursuing the claims.

And even if some debtors are still found to have concealed claims from the bankruptcy court without the incentives judicial estoppel offers, district court proceedings involving debtors would likely become more protracted through wasteful delay and procedural motion practice.  If a debtor is caught concealing a claim, but the Chapter 7 trustee abandons it, the district court would have to hear a likely meritless claim that presently could have been dismissed based on judicial estoppel.  Alternatively, if a debtor is caught concealing a claim and the Chapter 7 trustee deems it valuable, the trustee would need to be substituted, counsel may be replaced, and the proceeding delayed.  By contrast, if the trustee knew of the claim to begin with, it would have been litigated to final judgment without that disruption.  And the process could become even more attenuated if, as happened here, the debtor then converts to a Chapter 13 proceeding and re-assumes her position as the real party in interest in the district court action.

54

For all of these reasons, this Court should reaffirm *Burnes*, *Barger*, and their progeny, and ensure that district courts may continue to police inconsistent positions between bankruptcy courts and district courts, just as they do between district courts and others courts.

## II. ALTERNATIVELY, THE DISTRICT COURT'S DISMISSAL OF SLATER'S RACE-DISCRIMINATION CLAIM ON THE MERITS SHOULD BE AFFIRMED

Even if the Court were to modify its judicial-estoppel standard (it should not), it should affirm the district court's separate order granting summary judgment to U.S. Steel on the merits of Slater's claim for race discrimination based on disparate treatment regarding the transfer of service time (Dkt.51; *see supra*, at 6-7).[22]

To state a prima facie case for employment discrimination, a plaintiff must prove:  (1) she belongs to a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) the employer treated a similarly-situated employee outside of her protected class more favorably. *Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015).  As to the last element, the plaintiff must identify a similarly-situated employee who is "nearly identical to the plaintiff[] in order 'to prevent courts from second-guessing

---

[22]    Slater does not appeal the district court's grant of summary judgment on portions of her sex-discrimination claims (Dkt.51; *see supra*, at 14).  Accordingly, those claims have been abandoned.

employers' reasonable decisions and confusing apples with oranges.'" *Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999)).

Slater, an African-American woman, alleges that Farless, a white woman, was allowed to use service time earned at a different U.S. Steel plant in the calculation of her seniority status, while Slater was not allowed to do so. Dkt.1 ¶ 13. But the undisputed record shows that, in contrast to Slater, Farless was *not* a transfer employee. Dkt.29, Ex. B at 75:16-18 ("[Farless] did not transfer. She applied and was hired at Fairfield."); *see Slater*, 820 F.3d at 1196 n.3. Farless's employment history therefore was not a proper basis for comparison, and the district court correctly granted summary judgment to U.S. Steel on the race-discrimination claim on this independent basis.

## <u>CONCLUSION</u>

*Burnes* and *Barger* should not be overruled. The judgment should be affirmed.

56

DATED:  November 23, 2016          Respectfully submitted,


By: /s/ Kathleen M. Sullivan

| | |
|---|---|
| William H. Morrow | Kathleen M. Sullivan |
| Ivan B. Cooper | William B. Adams |
| LIGHTFOOT, FRANKLIN & | QUINN EMANUEL URQUHART & |
|   WHITE, L.L.C. |   SULLIVAN, LLP |
| The Clark Building | 51 Madison Avenue, 22nd Floor |
| 400 North 20th Street | New York, New York  10010 |
| Birmingham, Alabama 35203 | (212) 849-7000 |
| (205) 581-0700 | kathleensullivan@quinnemanuel.com |

*Attorneys for Appellee United States Steel Corporation*

57

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 13,982 words (based on the Microsoft Word word-count function) excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because it has been prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman, 14-point type, and with the type-style requirements of Fed. R. App. P. 32(a)(6).

<u>/s/ Kathleen M. Sullivan</u>
Kathleen M. Sullivan
*Attorney for Appellee*

## **CERTIFICATE OF SERVICE**

I, Kathleen M. Sullivan, a member of the Bar of this Court, hereby certify that on November 23, 2016, I electronically filed the foregoing "*En Banc* Brief for Appellee United States Steel Corporation" with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


/s/ Kathleen M. Sullivan
Kathleen M. Sullivan
*Attorney for Appellee*

59